[Civ. No. 15845.   Second Dist., Div. Two.   July 28, 1947.]

JOSEPHINE A. BLISS, Appellant, v. SECURITY-FIRST
NATIONAL BANK OF LOS ANGELES (a National
Banking Association) et al., Respondents.

Edgar G. Wenzlaff and Glenn E. Whitney for Appellant.

Gibson, Dunn & Crutcher and Sherman Welpton, Jr., for Respondents.

MOORE, P. J.—Two questions for decision: (1) Where a testator bequeaths a life estate in a note secured by a deed of trust on real property to a life tenant with the remainder to another and the trustor becomes delinquent in his payments, is the notice of default and election to sell under the deed of trust signed by the life tenant only with the oral consent and approval of the remainderman a sufficient compliance with legal requirements as to such notice? (2) Where after a sale of the trust property the purchaser thereof sued the trustors for unlawful detainer pursuant to section 1161a, Code of Civil Procedure, alleging ownership by virtue of her purchase at a trustee's sale regularly conducted, and such allegations were denied, is the judgment in such action res judicata of an action to set aside the trustee's sale?

From an adverse judgment in an action to quiet title to certain real property and to nullify the trustee's sale thereof, plaintiff has appealed.

By his holographic will W. M. Holeman bequeathed to his ·wife, Eva, a life estate in a note secured by trust deed upon Lot 50, Tract 4661 in the city of Glendale, with the remainder to

his daughter, Edna Grigsby. The trustee under the trust deed was the Security-First National Bank. The decree construing the will directed that such property ''be held intact as to principal during the lifetime of Eva . . . and upon her death, the same shall pass to Edna . . . .'' More than four years after the estate had been distributed Eva Holeman gave notice of default and election to sell under the trust deed on account of the nonpayment of delinquent taxes and of all the monthly installments of interest due on and after May 18, 1941; ''and that by reason of such breach, the undersigned present beneficiary under said deed of trust, has executed and delivered to said trustee a written declaration of default and demand for sale . . . and has declared and does hereby declare all sums secured thereby immediately due and has elected to cause the property . . . to be sold . . . to satisfy the obligations secured thereby.'' Although appellant received a copy of such notice in August, 1941, neither she nor her husband attended the trustee's sale.

At the trustee's sale Edna Grigsby was the purchaser. Following her demand for possession and the refusal of appellant and her husband to vacate, Edna filed an action of unlawful detainer in the justice's court of Glendale Township against appellant and her husband. By her complaint she alleged that Lot 50, then held by the Blisses, had been sold to her in accordance with section 2924 of the Civil Code under a power of sale contained in the deed of trust executed by Mr. and Mrs. Bliss; that a deed thereto from the trustee to Edna had been recorded in the office of the county recorder, and the title thereto having been duly perfected, Edna was the owner and entitled to possession. Appellant and her husband denied the allegations of that complaint and upon the issues thereby created it was later stipulated that judgment be entered in favor of the plaintiff. Thereupon the court adjudged that Edna Grigsby was entitled to the immediate possession of Lot 50. Pursuant to such judgment Edna gained possession of the property in June, 1942, and thereafter exercised all the rights of ownership.

The instant action was commenced on June 8, 1945. Upon the conclusion of the trial the court found as follows: (1) The notice of default and election to sell were properly given to the trustee by Eva Holeman; (2) such notice was given with the knowledge and consent of Edna Grigsby, the remainderman of the beneficial interest; (3) throughout the entire pro-

ceedings Mrs. Holeman acted as the agent of Edna; (4) the latter consented to and in all respects ratified the actions of Eva in giving the notice of default and in all matters pertaining to the proceedings of the trustee's sale; (5) a valid title to Lot 50 became vested in Edna by virtue of the trustee's sale and neither Mrs. Bliss nor the bank has any further interest in the property; (6) Edna as plaintiff sued Josephine Bliss and her husband in an unlawful detainer action in the justice's court of Glendale Township for possession of Lot 50; (7) in that action Edna was plaintiff, and appellant herein and her husband were defendants who there contended that they were owners and entitled to the possession of the very property herein involved but the court awarded judgment denying their contentions and adjudged Edna to be owner and entitled to immediate possession; (8) such judgment is res judicata of the issue of ownership in the instant action. Upon such finding the superior court concluded and adjudged that Edna Grigsby is the sole and unconditional owner of the real estate and that appellant has no further interest therein.

The first contention of appellant is that the sale by the trustee under the deed of trust was a nullity by reason of the failure of Edna Grigsby to sign the notice of default and election to sell. She argues that the trustee had no right to act under such circumstances in the absence of a formal written request authorizing the trustee to do so. She cites section 2924 of the Civil Code which provides in substance that the power of enforcement shall not be exercised until the trustee or the beneficiary shall first file for record in the office of the recorder a notice of default and of his election to sell the property to satisfy the trustor's debt. She cites also section 860 of the Civil Code which provides that where a power is vested in several persons all must unite in its execution. Her thesis then is that since Edna was the remainderman, she was a beneficiary and her failure to sign the notice of default rendered it void.

The answer to such contention is that it is the right and the duty of the life tenant to protect the corpus of the estate against waste. As such life tenant she is a trustee for the remainderman and is obliged to take any action for the protection of the corpus of the estate. In such a situation as that presented by the instant action it is the duty of the life tenant to take such action as may be necessary to fore-

close a security that is in default, to the end that the estate may not be dissipated by the accumulation of delinquent taxes and unpaid interest and by the expenditure of any other sums necessary for the protection of the property. Such wastage may become even more serious than the depreciation and decay in the case of a home that is subject to a lien likely to be foreclosed. Not only was the life tenant herein as such trustee obliged during her tenancy to prevent loss to the remainderman, but the very terms of the will vested in her the control of the property. Indubitably, one of the primary purposes of the testator, if not his chief aim in imposing such obligation, was to protect the estate of the remainderman.

The owner of a life estate is required by law to do no act to the injury of the inheritance. (Civ. Code, § 818.) When successive interests exist in a thing other than land and the present interest is a life interest, then in the absence of a manifestation of an inconsistent intent in the instrument creating the successive interests each future interest includes a right correlative to the duties of the owner of such present interest that (a) he shall for the duration of his interest act relative to the thing in the manner in which the owner of complete property in a like thing normally would act; (b) that he shall not intentionally inflict harm upon the owner of a future interest by the manner in which he exercises his power to transfer or surrender his present interest; and (c) that when the provisions of the instrument creating the successive interests entitle another to such thing, the holder of the present interest shall deliver to the person next entitled the original thing or lawfully substituted things, including all capital gains made during the continuance of the then ending prior limited interest. (Rest. of Law of Property, § 204.)* This means nothing more nor less than that while a life tenant is entitled to the full use and enjoyment of his life estate the only restriction upon such use is that the estate of the remainderman shall not be permanently diminished in value by the life tenant's neglecting to do what an ordinarily prudent person would do in preserving his own property. (33 Am.Jur.,

---

*The illustration given by the Restatement under this section is that where A owns bonds worth $100,000, transfers them to his wife, B, for life and at her death to his son C, when B learns that the bonds of a certain corporation included in A's transfer are likely to fail and that the publicity of such failure will cause a substantial decrease in the selling price of such bonds, it is B's duty to C forthwith to sell the bonds.

§ 217.) Although a life tenant is privileged to convert one kind of property into another, he must be at all times guided by principles of prudence to the end that the value of the property is not diminished. (21 C.J., § 245, p. 1040.)

A testator has the right to make the life tenant trustee of the property bequeathed; and when this is done the will shall be searched for evidences of the testator's intention that the life tenant should be trustee subject to the general rules pertaining to the obligation of a trustee to his cestui que trust. (*In re Garrity*, 108 Cal. 463, 471 [38 P. 628, 41 P. 485].)

Where a decree distributes a legacy to a person for his natural life with the unused portion thereof to go to a remainderman, it creates a mere life estate in the first taker and vests the unused portion of the estate in the remainderman. And the first taker holds the estate not as owner but as trustee in the sense that he must have due regard for the rights of him who will succeed to the title in fee. This constitutes him an implied trustee. (*Hardy* v. *Mayhew*, 158 Cal. 95, 104 [110 P. 113, 139 Am.St.Rep. 73]; *Collins* v. *Hartford Accident & Indemnity Co.*, 178 Va. 501 [17 S.E.2d 413, 418, 137 A.L.R. 1046, 1054].)

The conclusion is unavoidable that Eva Holeman as life tenant held the corpus of the estate left to her by her husband as trustee for the benefit of Edna Grigsby. As such trustee it was her duty to take any steps necessary for the protection of the beneficiary of the trust. It follows therefore that the signature of Edna on the notice of default was not essential to its validity. The foregoing principles and their pertinency are sufficient to dispose of all points raised by appellant against the competency of Mrs. Holeman's notice of default.

By the proof which was received on the trial of the action the court was not obliged to rely merely upon the implications arising from the trust relation of the life tenant to the remainderman. It was established by the evidence that Mrs. Grigsby made Mrs. Holeman her agent in forwarding the notice of default and ratified her actions by adopting all that she had done in effecting a foreclosure sale. Not only was Mrs. Holeman the life tenant of the trust deed but she was the stepmother of Edna Grigsby. The latter's husband was trust officer of the bank and was also mutual advisor of both women. Not only did Mrs. Grigsby desire and advise the execution and delivery of the notice of default and intention

to sell by Mrs. Holeman, but Edna became the actual purchaser at the trustee's sale. By thus purchasing, she confirmed all that had been done by the life tenant towards effectting the foreclosure sale.

Appellant contends that Mrs. Grigsby did not ratify the acts of Mrs. Holeman and argues that such ratification could have been made only in the manner necessary to confer an original authority for the act ratified. Also, she argues that an authority to enter into a contract required to be in writing can be given only by a written instrument, citing section 2309, Civil Code. But the fact of entering into a contract is not involved in the procedure of Mrs. Holeman in requesting the trustee to sell. Mrs. Holeman's part in bringing on the trustee's sale consisted of doing nothing more than giving a notice of a breach of the contract which had been left to her and Edna by Mr. Holeman. She merely elected to proceed as that contract provided. ■ An oral authorization to give notice of a trustor's breach is sufficient. (Civ. Code, § 2309.) ■ Where a notice is necessary to be served upon a party who has breached his obligations it is sufficient to prove at the trial that the person who signed the notice was authorized to do so, and written authorization is not necessary in the absence of a statute requiring such writing. (*Merchants National Bank of San Francisco* v. *Weston*, 34 Cal.App. 693, 694 [168 P. 587] ; *Wayland* v. *Latham*, 89 Cal. App. 55, 67 [264 P. 766] ; Rest., Agency, § 30.) The fact that the notice of a breach of one's obligation purports to come from the obligee is sufficient. (*Felton* v. *Millard*, 81 Cal. 540, 541 [21 P. 533, 22 P. 750].) ■ Of course, the notice of Mrs. Holeman did not purport to come from Edna, but the trustee knew the duties of the life tenant to Edna and that the notice was therefore competent to authorize the sale. It follows that not only was it proved that Edna orally authorized Mrs. Holeman to sign the notice of default, but by becoming the purchaser at the sale which was required by the notice she confirmed all of the acts of Mrs. Holeman by accepting the benefits of such acts with notice thereof. (Civ. Code, § 2310.)

Is it conceivable that Mrs. Grigsby could at any time after her purchase have rescinded it for want of authority on the part of the trustee? As remainderman she is the only person who might have attacked the sale, since appellant was in default and therefore could not have upset the sale. Appel-

lant argues that in order for a ratification to be valid it also must have been in writing. It is suggested that her acceptance and recording of the trustee's deed is the equivalent of a writing. The vice of the contention that Edna Grigsby should also have signed the notice of default will appear more emphatic on realizing that she held a vested remainder with contingent remaindermen who might have succeeded to the estate in the event of Mrs. Grigsby's predeceasing Mrs. Holeman. Had that occurred, under the theory of appellant, Mrs. Holeman could not properly have given notice of default and election to sell until such contingent remainderman had joined in the written notice of default.

But the judgment of the justice's court of Glendale Township is itself sufficient answer to this appeal. After having purchased the property at the trustee's sale Mrs. Grigsby was forced to institute her unlawful detainer action to gain possession of the property which appellant and her husband insisted upon holding after title had become vested in Mrs. Grigsby. Their answer to the Grigsby complaint created the issue of ownership which at the trial was established to be in Mrs. Grigsby. The doctrine of res judicata is applicable. That doctrine is that an existing final judgment on the merits of a cause rendered by a court of competent jurisdiction is in all subsequent actions conclusive of the rights of the parties thereto and of their privies on all material issues which were, or might have been, determined. (*Seidell* v. *Anglo-California Trust Co.*, 55 Cal.App. 2d 913, 918 [132 P.2d 12].) A person who has acquired ownership of a piece of property under the provision of a deed of trust may prove that such property was sold to him in accordance with section 2924 of the Civil Code. That section provides for the proceedings on the sale of real property under trust deeds for breach of covenant including the time, manner and contents of the notices of breach and sale. Under section 1161a, Code of Civil Procedure, a purchaser who has acquired the title at such trustee's sale must prove that the property was sold in accordance with section 2924 of the Civil Code under a power of sale and that title under the sale has been duly perfected. Under such unlawful detainer statutes title to the extent required by section 1161a not only may but must be tried. In such actions the provisions of the statutes extending the remedy beyond the cases where the conventional relation of landlord and tenant

exists are not to be judicially nullified. (*Seidell* v. *Anglo-California Trust Co.*, supra; *Nineteenth Realty Co.* v. *Diggs*, 134 Cal.App. 278, 289 [25 P.2d 522]; *Mortgage Guarantee Co.* v. *Smith*, 9 Cal.App.2d 618, 619 [50 P.2d 835]; *Hewitt* v. *Justice's Court*, 131 Cal.App. 439 [21 P.2d 641].) The bleak language of the judgment which merely restored possession to Mrs. Grigsby is a sufficient adjudication of her ownership in view of the issues tendered.

Appellant contends that the court's denial of her motion for a new trial was prejudicial error. She based her motion upon the discovery of evidence of two facts, namely, (1) evidence of the mental incompetency of Mrs. Holeman and her incompetency to transact business at the time when she gave the notice of default; (2) evidence that the note secured by the trust deed was not in default in that she had found among the effects of her deceased husband promissory notes which had been given to Mrs. Holeman in payment of interest on the trust deed note and subsequently paid, showing that all interest had been paid on the trust deed note up to August 18, 1941. She says in her affidavit that the evidence of the unsoundness of Mrs. Holeman could not have been discovered before the trial "as it was only by chance and good fortune that your affiant discovered the name of the doctor that attended the said Eva Holeman before her death and only by the exercise of the greatest diligence and work was she able to discover the said notes in payment of interest on the trust deed note." It cannot be held that the trial court abused its discretion in denying the motion. Whether newly discovered evidence could with reasonable diligence have been discovered and produced at the trial and whether, if produced, a different conclusion might have resulted are questions addressed to the sound legal discretion of the trial court, and its action will not be disturbed unless it is clear that such discretion has been manifestly abused. (*Baule* v. *Drobatz*, 6 Cal.App. 594, 596 [92 P. 666].)

The claim of newly discovered evidence as ground for a new trial is universally regarded with distrust and disfavor for obvious good reasons. A sound public policy requires every litigant to exhaust all diligence and reasonable efforts to produce at the trial of his cause all existing evidence in his behalf. Furthermore, the decision by the trial court of the question whether newly discovered evidence would effectuate a different result when rejected by the trial

court cannot be disturbed on appeal in the absence of a clear showing of an abuse of discretion. Before such evidence will receive consideration from the reviewing court it must be of such character as would make it reasonably certain that upon a new trial a different judgment would result. (*Shivers* v. *Palmer*, 59 Cal.App.2d 572, 581 [139 P.2d 952]; *Atherley* v. *Market Street Ry. Co.*, 42 Cal.App.2d 354, 363 [108 P.2d 927]; *Berkowitz* v. *Kiener Co.*, 37 Cal.App.2d 419 [99 P.2d 578].)

A hasty glance at the record herein will disclose that the discovery of the evidence is too belated to justify a court's reversal of its judgment. The note was made by Mr. and Mrs. Bliss in 1930. The notice of default was forwarded to Mrs. Bliss in August, 1941. While the property was sold by the trustee on December 26, 1941, appellant and her husband resisted her gaining possession of the property in the spring of 1942 only to witness the triumph of Mrs. Grigsby in June of that year. Three years later appellant instituted this action which was tried on March 22, 1946. There is no showing of diligence in any chapter of the entire story. In addition to the foregoing facts, Mrs. Bliss testified at the trial that the note was in default on July 14, 1941, and that the taxes were unpaid. Thereupon her attorney stipulated that there was a default in the note on the principal and interest. As to the affidavit of the physician who deposed that Mrs. Holeman was old, weak, senile, mentally incompetent and continuously unsound, with lucid intervals about the date of giving the notice of default, such proof upon a second trial would be merely contradictory of that of the Grigsbys who testified concerning conferences and correspondence with her at that time. The showing is not sufficient to warrant an interference by this court with the exercise of discretion by the superior court.

The judgment is affirmed and the purported appeal from the order denying a new trial is dismissed.

McComb, J., and Wilson, J., concurred.